IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN CULLEN, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION No. 09-1562 |
| | ) Judge Fischer |
| | ) Magistrate Judge Bissoon |
| PENNSYLVANIA DEPARTMENT OF | ) |
| CORRECTIONS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

For the reasons that follow, the claims raised by Plaintiff Donald Rusch ("Rusch") against Defendants Adams, Ludwig, Xander and Community Education Centers, Inc. ("Moving Defendants") will be dismissed.

I. **Relevant Factual and Procedural History**

Rusch is one of four State prisoners who, at the time this lawsuit was filed, were all incarcerated at the State Correctional Institution at Pittsburgh ("SCI-Pittsburgh"). Plaintiffs bring this suit pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging that a variety of practices and conditions at SCI-Pittsburgh violate their Constitutional rights. See, generally, Compl. (ECF No. 14). This suit commenced with the receipt of the complaint on November 11, 2009. (ECF No. 1). Plaintiffs were granted leave to proceed *in forma pauperis* ("IFP") on January 22, 2010. Moving Defendants filed the instant motion to dismiss on May 7, 2010. (ECF No. 58). Moving Defendants filed a brief supporting said motion on May 12, 2010. (ECF No. 62). Plaintiffs were ordered to respond on or before June 7, 2010.

(ECF No. 60). As of the date of this writing, there has been no response to this motion, nor have Plaintiffs moved for an extension of time. This motion is ripe for disposition.

Germane to this memorandum opinion are Plaintiffs' allegations and claims against Moving Defendants only. These appear to involve alleged acts or omissions made with respect to Rusch, and are confined to paragraphs 96-108, 118-19, and 152-157.

Rusch alleges that, on January 22, 2009, he entered the Therapeutic Community ("TC") Program, which he asserts was a requirement for parole. (ECF No. 14) ¶ 101. Rusch avers that the program required that inmates "'inform' on one another's behaviors[,]" and prohibited the use of the words "God" or "Higher Power" while in the program. Id. ¶¶ 100, 102. Rusch further avers that, between January 22, 2009 and January 26, 2009, he "observed inmates in the TC Program being required to sing nursery rhymes to the point of humiliation."[1] Id. ¶ 103.

On January 26, 2009, just four days after entering the TC Program, Rusch sought permission from Moving Defendant Xander, and nonmoving Defendant McCoy, to leave it. Id. ¶ 104. Rusch states that the TC Program's "philosophy and concepts . . . compromised [his] moral and spiritual principles, as well as placed his safety in jeopardy." Id. Defendant Xander allegedly told Rusch that Rusch "would be required to sit in a chair and face the wall for three days[,]" and attempted to conduct a "Last Chance Intervention[,]" in response to Rusch's attempt to leave the program. Id. ¶ 105. Rusch refused to take part in either of these acts. Id. The following day, on January 27, 2009, Rusch was discharged from the TC Program. Id.

After Rusch removed himself from the program, an evaluation was prepared by Defendant Adams – with the assistance of Defendant Xander – and forwarded to the Parole Board. Id. ¶¶ 107. Rusch was provided with this document on March 20, 2009. Id. He alleges

---

[1] Rusch does not allege that he was forced to take part in this singing.

that it "contained falsehoods and misstatements of facts so as to portray Rusch in the worst possible light to the Parole Board." Id. The evaluation also allegedly failed to mention Rusch's concerns regarding his safety and the lack of spiritual basis for the TC Program. Id. ¶ 108.

Sometime in July of 2009, Rusch was interviewed for parole. He alleges that he was denied parole "due to his failure to complete the TC Program and the evaluation submitted by [Defendant] Adams." Id. ¶ 118.

Based on the above alleged acts and omissions, Rusch asserts that Moving Defendants violated his rights under 1) the Free Speech Clause of the First Amendment; 2) the Free Exercise Clause of the First Amendment; 3) the Due Process Clause of the Fourteenth Amendment; and 4) the Eighth Amendment's prohibition of cruel and unusual punishment. Id. ¶ 156. Moving Defendants argue that Rusch has failed to state a claim upon which relief may be granted, and move for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Mot. to D. (ECF No. 58) at 1.

**II. Standard of Review**

When adjudicating a 12(b)(6) motion, a court must accept as true all allegations of the complaint, and all reasonable factual inferences must be viewed in the light most favorable to the Plaintiff. See Angelastro v. Prudential-Bache Sec, Inc., 764 F.2d 939, 944 (3d Cir. 1985). However, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004). Nor must a court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Furthermore, it is not proper for a court to assume that "the [plaintiff] can prove facts which [he or she] has not

alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." Assoc.'d Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

Additionally, a court must dismiss a complaint that does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. This is not to say that the Supreme Court requires "heightened fact pleading of specifics . . . ." Id. at 570. However, "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555. The Court has made it clear that the requirement that pleadings must be facially plausible, as expressed in Twombly, applies to all civil suits in the federal courts. See Ashcroft v. Iqbal, 556 U.S. ____, 129 S.Ct. 1937 (2009).

A court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. See Haines v. Kerner, 404 U.S. 519, 520 (1972). In a section 1983 action, a court must liberally construe a *pro se* litigant's pleadings and "'apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name.'" Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). "'Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.'" Higgins, 293 F.3d at 688 (quoting Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)).

Finally, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint – regardless of whether the plaintiff requests to do so – when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. See Fletcher-Harlee Corp. v. Pote

4

Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).

**III. Analysis.**

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. First, the alleged misconduct giving rise to the cause of action must have been committed by a person acting under color of state law; and second, the defendants' conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), (overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986)). Moving Defendants make several arguments in support of dismissal of the claims against them. These will be addressed *seriatim*.

**A. First Amendment Free Exercise of Religion Claims**

Moving Defendants argue that Rusch has failed to state a claim with respect to alleged violations of his right to free exercise of religion because the complaint is devoid of any allegations of "what manner of faith he practices, the basic tenets of his faith, the manner in which he desired to practice these tenets of his faith or how he was deprived of all means of practicing his faith." (ECF No. 62) at 7.

The First Amendment to the U.S. Constitution, made applicable to the states by the Fourteenth Amendment, Cantwell v. Connecticut, 310 U.S. 296, 303 (1940), provides, *inter alia*, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const. amend. I. "Convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," Bell v. Wolfish, 441 U.S.

5

520, 545 (1979), including the protections of the First Amendment and its directive that no law shall prohibit the free exercise of religion.  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).  "[A]ll prisoners must be afforded reasonable opportunities to 'exercise the religious freedom guaranteed by the First and Fourteenth Amendments.'"  Small v. Lehman, 98 F.3d 762, 765 (3d Cir.1996) (overruled in part on other grounds, City of Boerne v. Flores, 521 U.S. 507 (1997)) (quoting Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972)).

"The mere assertion of a religious belief does not automatically trigger First Amendment protections, however. To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000). See also Sutton v. Rasheed, 323 F.3d 236, 250-51 (3d Cir. 2003).

Once a sincerely held religious belief has been demonstrated, an inmate may show that a prison regulation or practice violates the right to free exercise of religion by showing that it violated the "reasonableness test" set forth in Turner v. Safley, 482 U.S. 78, 89 (1987), and O'Lone, 482 U.S. 349.  This test examines the following four factors: (1) whether the regulation or practice in question furthers a legitimate governmental interest unrelated to the suppression of expression; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety for guards and other prisoners; and (4) whether an alternative exists which would fully accommodate the prisoners' rights at *de minimis* cost to valid penological interests. Thornburgh v. Abbott, 490 U.S. 401, 415-18; Turner, 482 U.S. at 89-91.  These standards indicate that "when a prison regulation or practice encroaches upon prisoners' rights to free exercise of their religion, the regulation is valid if it is reasonably related to a legitimate penological interest." Ramzidden v. Monmouth County Sherriff Dept., No. 09-4829, 2010 WL

6

1752540, at *11 (D.N.J. Apr. 30, 2010). However, prison administrators need not choose the least restrictive means possible in trying to further penological interests, Thornburgh, 490 U.S. at 411, and it is the burden of the plaintiff to disprove the validity of a prison regulation or practice. Williams v. Morton, 343 F.3d 212, 217 (2003) (citing Overton v. Bazzetta, 539 U.S. 126 (2003)).

In light of this standard, Rusch's pleadings with respect to this claim against Moving Defendants are deficient for many reasons. He fails to allege facts supporting a sincerely held religious belief, or how the alleged limitations imposed by Moving Defendants impacted his ability to practice those beliefs – if at all. Additionally, he fails to allege facts suggesting that any of the limitations on his religious practices were unreasonable. Rusch clearly has failed to state a claim under the Free Exercise Clause against Moving Defendants. However, it would not necessarily be futile to allow Rusch leave to amend. As such, Rusch's free exercise claims against Moving Defendants will be dismissed without prejudice to filing an amended complaint.

### B. First Amendment Free Speech Claims

Moving Defendants argue that Plaintiffs fail to state a claim against them under the Free Speech Clause of the First Amendment because Plaintiffs fail to identify which, if any, of the Moving Defendants violated Plaintiffs' rights, or the manner in which this right was violated. (ECF No. 62) at 7.

An examination of the complaint reveals that this is indeed the case. Nowhere does Rusch allege how, when, or by whom his right to free speech was violated. Because of these deficiencies, Rusch has failed to state a claim that is facially plausible against any of the Moving Defendants. See Twombly, 550 U.S. at 570. However, it does not appear that amendment

would necessarily be futile. Consequently, Rusch's free speech claims against Moving Defendants will be dismissed without prejudice to filing an amended complaint.

### C. Fourteenth Amendment Due Process Claims

Moving Defendants argue that Rusch has failed to state a claim under the Due Process clause of the Fourteenth Amendment because he cannot, as a matter of law, implicate a valid liberty interest that Moving Defendants' alleged acts and/or omissions violated.

In order to state a claim under the Due Process Clause, a plaintiff must first set out facts that demonstrate he had a protected liberty interest impaired by the defendants' actions. Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972). Once a court determines that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. Morrissey, 408 U.S. at 481.

As the Supreme Court of the United States has recognized on multiple occasions, "prisoners do not shed all constitutional rights at the prison gate[.]" Sandin v. Conner, 515 U.S. 472, 485 (1995) (citing Wolff v. McDonnell, 418 U.S. 539, 555 (1984)). However, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Sandin, 515 U.S. at 485 (internal quotations and citations omitted). One of these limitations, in the context of State prison regulations, is that a liberty interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484 (internal citations and quotations omitted).

Under this standard, to the extent that Plaintiff alleges a violation of due process with respect to his treatment in the TC Program, his claims must fail as a matter of law. Plaintiff fails to allege any facts that, if proven true, would support the conclusion that he suffered any sort of atypical or significant hardship with respect to his time with the program. He was involved with it for only five days, and was allowed to leave it upon his own initiative, and at a time of his choosing. Given that it has been held that administrative confinement for as long as fifteen months is insufficient to implicate a liberty interest, see Griffin v. Vaughn, 112 F.3d 703, 706-07 (3d Cir. 1997), it is clear that Rusch's inclusion in the TC Program for such a short period of time, and under the conditions that he alleges, would not do so either.

Similarly, to the extent that Plaintiff asserts that Moving Defendants have violated his due process rights with respect to his parole hearing, his claim also must fail as a matter of law. It is well settled law that the Due Process Clause of the United States Constitution does not of its own force create a liberty interest in parole. Board of Pardons v. Allen, 482 U.S. 369, 373 (1987); Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979) (stating that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence" and distinguishing parole revocation, which implicates a liberty interest, from parole release decisions, which do not). The same is true of Pennsylvania State law. See, e.g., Henry v. Bello, No. 92-4341, 1994 WL 27320, *1 (E.D.Pa. Feb. 1, 1994) ("[h]owever, the Pennsylvania Probation and Parole Act gives the parole board considerable discretion to decide whether to grant parole, 61 P.S. § 331.21; therefore, the Commonwealth has not created a liberty interest in parole"[2]); Folk v. Atty. Gen. of

---

[2] 61 P.S. § 331.21, the statute governing parole within the Commonwealth of Pennsylvania at the time of Plaintiff's July, 2009, parole hearing, was repealed in August of 2009. The statute governing parole may now be found at 61 Pa.C.S.A. § 6137.

9

Commwealth of Pennsylvania, 424 F.Supp.2d 663, 670-71 (W.D.Pa. 2006); McFadden v. Lehman, 968 F.Supp. 1001, 1004 (M.D.Pa. 1997) ("Pennsylvania has not created an enforceable liberty interest in parole, rehabilitative pre-release programs, or in therapy programs."); Nieves v. Pennsylvania Bd. of Probation and parole, 995 A.2d 412, 418 (Pa.Cmwlth. 2010) ("a prisoner does not have a protected liberty interest, or due process rights, in parole until the inmate is actually released on parole"). Consequently, Rusch's due process claims against Moving Defendants will be dismissed. Additionally, as it is apparent that any attempt to cure the deficiencies in Plaintiff's due process claims would be futile, this dismissal will be with prejudice.

### D. Eighth Amendment Claims

Rusch makes bald assertions that Moving Defendants violated his rights under the Eighth Amendment's prohibition of cruel and unusual punishment. Moving Defendants do not specifically address these claims.[3] To be sure, a fair reading of the sections of the complaint that are germane to Moving Defendant's instant motion does not appear to reveal any factual

---

[3] Even though Moving Defendants do not address Rusch's Eighth Amendment claim, it is still proper for this Court to address the issue *sua sponte*. 28 U.S.C.§ 1915 (as amended) requires the federal courts to review complaints filed by persons that are proceeding IFP and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). Thus, a court must dismiss, *sua sponte*, any claim that lacks arguable merit in fact or law. Stackhouse v. Crocker, 266 Fed.Appx. 189, 190 (3d Cir. 2008) (citing Neitzke v. Williams, 490 U.S. 319, 325 (1989)). The standard for reviewing a complaint under this section 1915(e)(2)(B) is the same as that for determining a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999); see also Banks v. Mozingo, No. 08-004, 2009 WL 497572, at *6 (W.D.Pa. Feb. 26, 2009) (Cercone, J.). As Rusch has failed to state a claim with respect to this issue as a matter of law, dismissal is proper pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

allegations relating to abuse, denial of medical treatment, or poor conditions of confinement that are the traditional bases for Eighth Amendment claims. It is unclear exactly which alleged acts or omissions of the Moving Defendants serve as Rusch's purported grounds for relief. However, out of an abundance of caution, this Court interprets Rusch's Eighth Amendment claims to be tied to his assertion that the TC Program required him to "snitch" on other inmates.

The Eighth Amendment protects individuals from the infliction of "cruel and unusual punishments." It guarantees humane conditions of confinement and, consequently, requires prison officials to ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). In order to state a claim under the Cruel and Unusual Punishment Clause of the Eighth Amendment, an inmate must show that 1) he suffered a risk of "serious" harm; and 2) prison officials showed "deliberate indifference" to this risk. Farmer, 511 U.S. at 834.

The first element is satisfied when the alleged "punishment" is "objectively sufficiently serious." Id. In order to make this determination, "courts must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency." Walker v. Campbell, No. 09-282, 2010 WL 2891488, at *4 (W.D.Pa. May 4, 2010). The prisoner must show that the risk at issue is one that is intolerable in modern society. Helling v. McKinney, 509 U.S. 25, 35 (1993).

The second element of an Eighth Amendment Claim – deliberate indifference – requires an inmate to show that a prison official had a sufficiently culpable state of mind. This standard has been defined as requiring that "the official knows of and disregards an excessive risk to

11

inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Turning now to Rusch's factual allegations, it has been established that the labeling of a prisoner as a "snitch" in order to cause harm by other inmates can state an Eighth Amendment excessive force claim. See Cooper v. Beard, No. 06-0171, 2006 WL 32087373, at *11 (E.D.Pa. Nov. 2, 2006) (citing cases); cf. Walker, 2010 WL 2891488, at *7. However, Rusch does not allege that Moving Defendants engaged in such an act. Instead, Rusch alleges that he was asked to inform on other inmates in the context of a prison rehabilitation program – which does not satisfy the "deliberate indifference" standard, as explained above.[4] See Walker, 2010 WL 2891488, at *7. Consequently, Rusch has failed to state a claim that Moving Defendants violated his rights under the Eighth Amendment, and this claim will be dismissed. However, as it does not appear that amendment would necessarily be futile, this dismissal will be without prejudice to Rusch's ability to file an amended complaint with respect to this claim.

### E. Plaintiffs Cullen, Perry, and Stull

This Court notes that Co-Plaintiffs Cullen, Perry, and Stull make no factual allegations against Moving Defendants in the complaint. Indeed, the only allegations made against Moving Defendants arise from Rusch's specific experiences with them in the TC Program, and during his subsequent attempt to obtain parole. Consequently, to the extent that Co-Plaintiffs Cullen, Perry, and Stull seek to raise legal claims against Moving Defendants, they must be dismissed, as

---

[4] Additionally, this Court takes notice of the fact that Rusch does not indicate that he actually informed on the other inmates in the TC Program, or whether he actually was labeled as a "snitch" for his participation in the program.

Plaintiffs Cullen, Perry, and Stull have not raised even the specter of a facially-plausible right to relief against Moving Defendants. See Twombly, 550 U.S. at 570. Furthermore, as the factual allegations in the complaint are narrowly-tailored to apply only to Rusch, and do not so much as imply that Co-Plaintiffs Cullen, Perry, and Stull had any interactions with Moving Defendants whatsoever, the conclusion that leave to amend would be inequitable or futile is inescapable. Cf. Arrango v. Winstead, 352 Fed.Appx 664, 666 (3d Cir. 2009) (noting that the district court's refusal to grant leave to amend was proper given that no facts were alleged from which the court could infer that the plaintiff was denied a constitutional right, and plaintiff had failed to respond when this issue was raised in a motion to dismiss). Thus, dismissal will be with prejudice.

An appropriate order will follow.

s/Nora Barry Fischer
NORA BARRY FISCHER
UNITED STATES DISTRICT JUDGE

Dated: December 21, 2010

**cc:**
**JOHN CULLEN**
BC6256
SCI Pittsburgh
PO Box 99991
Pittsburgh, PA 15233

**MICHAEL PERRY**
DA3194
SCI Pittsburgh
PO Box 99991
Pittsburgh, PA 15233

**MARTIN STULL**
GC6165
SCI Laurel Highlands
5706 Glades Pike
Somerset, PA 15501

**DONALD RUSCH**
HE7208
SCI Mercer
801 Butler Pike
Butler, PA 16137