IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN CULLEN, <br> MICHAEL PERRY, <br> MARTIN STULL, <br> DONALD RUSCH, <br>     Plaintiffs, <br>     v. <br> PENNSYLVANIA DEPARTMENT OF <br> CORRECTIONS, et al., <br>     Defendants. | Civil Action No. 09-1562 <br> District Judge Mark. R. Hornak <br> Magistrate Judge Cynthia Reed Eddy |

**MAGISTRATE JUDGE REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

For the reasons to follow, I recommend that defendants' Motion For Summary Judgment [ECF No. 114] be granted in part and denied in part. The Motion For Summary Judgment should be denied with respect to John Cullen's and Michael Perry's claims for monetary damages regarding double celling and other physical conditions of imprisonment against certain defendants in their personal capacities; in all other respects, the Motion for Summary Judgment should be granted in defendants' favor.

**II.     REPORT**

Plaintiffs, John Cullen, Michael Perry, Martin Stull, and Donald Rusch, are four State prisoners who, at the time this lawsuit was filed, were incarcerated at the State Correctional Institution at Pittsburgh ("SCI-Pittsburgh").[1] Plaintiffs bring this suit pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging that a variety of practices and conditions at SCI-

---

[1] A fifth plaintiff, Carl Thomas, was dismissed from the case in its embryonic stages. [ECF No. 12].

1

Pittsburgh violate their constitutional rights. See generally, Complaint [ECF No. 14]. Their Complaint names as defendants the Pennsylvania Department of Corrections ("PaDOC"), the Secretary of the PaDOC, Jeffrey Beard, in his official capacity only, and a host of officers, guards, employees and contractors of SCI-Pittsburgh, in both their official and personal capacities. Complaint, [ECF No. 14, at ¶¶ 6-32].

### A. Background

The Complaint commences with pertinent historical information about SCI-Pittsburgh, the subject of Judge (then Chief Judge) Maurice Cohill's landmark decision in Tillery v. Owens, 719 F.Supp. 1256 (W.D.Pa. 1989), aff'd, 907 F.2d 418 (3d Cir. 1990). Complaint, [ECF No. 14, ¶¶ 36-45]. In Tillery, Judge Cohill conducted a six-week trial and made an unannounced inspection of the facility at SCI-Pittsburgh, and, thereafter, concluded that double celling inmates in an antiquated, overcrowded, dilapidated and unsanitary state prison violated the Eighth Amendment's prohibition of cruel and unusual punishment. As a remedy, the Court ordered a wide range of corrective measures and improvements be made at SCI-Pittsburgh, including elimination of double celling, and appointed a court monitor to oversee implementation of the Court's order. The United States Court of Appeals for the Third Circuit affirmed this order and the equitable decree painstakingly fashioned by Judge Cohill.

Following that decision, many inmates of SCI-Pittsburgh were transferred to other facilities, additional personnel were hired, and extensive improvements were made to the physical plant. However, there is only so much that can be done with a facility built in the late 1800s and, in 2003, the Governor of Pennsylvania ordered SCI-Pittsburgh to be "mothballed," which it was in 2005. Complaint, [ECF No. 14, ¶¶ 51-52]. Because of severe overcrowding in the PaDOC system, SCI-Pittsburgh reopened in June, 2007 as a minimum security, level II

2

prison, and a Drug and Alcohol Treatment Center. Now, plaintiffs allege, SCI-Pittsburgh is "grossly understaffed and has not been provided with the funding and staff necessary to properly operate the prison or provide 'living conditions' different in any material way than those that existed prior to Judge Cohill's opinion in <u>Tillery v. Owens</u>. In essence, due to understaffing and overcrowding, the conditions at [SCI-Pittsburgh] have now returned to the way they were 20 years ago and it is again an overcrowded, unsanitary and understaffed death trap." Complaint, [ECF No. 14, ¶ 53].

### B. The Averments About Prison Conditions

The Complaint identifies a number of areas of inadequate, unsafe or unsanitary conditions at SCI-Pittsburgh, including: "double-celling & cell conditions," Complaint, [ECF No. 14, ¶¶ 54-63]; "prison overcrowding & the exercise yards," Complaint, [ECF No. ¶¶ 69-79]; "the law library and the inmates' access to the courts," Complaint, [ECF No. ¶¶ 80-95]; and the "Therapeutic Community Program" which, plaintiffs assert, violate the First and Eighth Amendments. Complaint, [ECF No. 14, ¶¶ 96-119]. Plaintiffs' Complaint was filed on behalf of the named plaintiffs and a class of former, current and future inmates of SCI-Pittsburgh. Complaint, [ECF No. 14, ¶¶ 120-132].

### C. Procedural History

The case was reassigned on October 27, 2011. [ECF No. 109]. Prior to that, District Judge Nora Barry Fischer, adopting the Report and Recommendation of Magistrate Judge Cathy Bissoon, dismissed the class action allegations. [ECF Nos. 75, 87]. Subsequently, Judge Fischer dismissed plaintiff Rusch's First, Eighth and Fourteenth Amendment claims against defendants Elysa Adams, Becky Ludwig, Stacey Xander and Community Education Centers, Inc., regarding the Therapeutic Community Program. Memorandum Opinion and Order [ECF Nos. 84, 85]. As

3

the other plaintiffs made no allegations regarding these defendants, they were dismissed from the case.

On November 11, 2011, defendants filed a Motion for Summary Judgment [ECF No. 114], seeking to have all of the remaining claims dismissed against all of the remaining defendants. Following some discovery wrangling and court intervention, supplemental responses and briefs were filed and the briefing cycle was completed on May 17, 2011. The Motion for Summary Judgment is now ripe.

**D. Claims for Injunctive and Declaratory Relief**

Federal courts may not decide an issue unless it presents a live case or controversy. See Ortho Pharm. Corp. v. Amgen, Inc., 882 F.2d 806, 810-11 (3d Cir. 1989) (quoting DeFunis v. Odegaard, 416 U.S. 312, 316 (1974)) ("Federal courts, having jurisdiction only to decide actual cases and controversies, are 'without the power to decide questions that cannot affect the rights of litigants in the case before them.'"). This limitation "'derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.'" DeFunis, 416 U.S. at 316. Once a controversy ceases to exist, the court must dismiss the case for lack of jurisdiction. United States v. Kissinger, 309 F.3d 179, 180 (3d Cir. 2002).

In the prison context, the transfer of an inmate from the offending facility moots any claims for injunctive relief involving that facility. See Abdul-Akbar v. Watson, 4 F.3d 195 (3d Cir. 1993); Sutton v. Rasheed, 323 F.3d 236 (3d Cir. 2003). Similarly, any claim plaintiffs make seeking declaratory relief is barred, because the Court is forbidden to declare that the defendants have violated plaintiffs' rights in the past. See Sharp v. Johnson, 2008 WL 941686, *11

4

(W.D.Pa. 2008) (citing P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) and Mehdipour v. Matthews, 22 Fed.Appx. 978, 978 n. 1 (10th Cir. 2001)).

All of the plaintiffs have been transferred to other PaDOC facilities during the course of this litigation. Accordingly, this Court has no authority to address any of the plaintiffs' claims for injunctive or declaratory relief, and such claims should be dismissed.

### E. Plaintiffs Rusch and Stull

Plaintiffs Rusch and Stull have not responded to defendants' Motion for Summary Judgment and have otherwise dropped off the Court's radar screen. The last we heard of Mr. Stull was when he filed a Notice of Change of Address on December 8, 2011, indicating he would soon be released, and that he was aware he had a response deadline to the Motion for Summary Judgment. [ECF No. 123]. It appears that Mr. Rusch has been released from custody as well, having served his sentence. Motion to Dismiss [ECF No. 111, ¶ 3]. Accordingly, in the absence of any response or brief in opposition to defendants' Motion for Summary Judgment, this Court should dismiss all of plaintiffs Rusch and Stull's claims against all defendants.

### F. Plaintiffs Cullen and Perry

Initially, plaintiffs Cullen and Perry do not claim that they were personally denied access to the courts, as do plaintiffs Rusch and Stull. Accordingly, no claim for denial of access to the courts remains viable. Similarly, plaintiffs Cullen and Perry do not claim that their constitutional rights were personally infringed by any defendants involved in the Therapeutic Community Program, and no claims with regard to that program remain viable.

We are left with Plaintiff Cullen's complaints that he was subjected to impermissible double celling, and Perry's several complaints about the dilapidated and deteriorated physical

condition of SCI-Pittsburgh, including rodents, leaking roofs, and inadequate fire escape equipment and plans.

Our starting point here is Tillery, which found SCI-Pittsburgh to be, at that time, "an overcrowded, unsanitary, and understaffed fire trap . . . ." Tillery, 719 F.Supp. 1259. The District Court did not hold that double celling is always unconstitutional, but rather, that double celling, in conjunction with all of the other deplorable conditions extant at SCI-Pittsburgh, made "inmate living conditions at [SCI-Pittsburgh] cruel and unusual by twentieth century standards and . . . therefore, unconstitutional." Id. at 1261. On appeal, the Third Circuit confirmed that "the practice of double celling at SCIP violates the Eighth Amendment and must be eliminated," in light of the District Court's "detailed and meticulous findings of fact concerning overcrowding, staff shortages, health care and environmental conditions, including plumbing, ventilation and sanitation." 907 F.2d at 421. Defendants do not suggest that the decree in Tillery has been vacated or dissolved but, obviously, much water has run under the bridge since that time.[2]

There is no doubt that many substantial improvements were made to SCI-Pittsburgh's physical plant, and that between prisoner transfers and increased staffing, some of the serious problems at SCI-Pittsburgh saw marked improvement. Nevertheless, conditions at SCI-Pittsburgh ultimately resulted in it being shut down in 2005, to be reimagined and reopened in 2007 as a minimum security, level II prison, with fewer and less violent inmates than before. Time and space (or lack of space) have apparently conspired to the point where double celling is once again deemed necessary and is common at SCI-Pittsburgh. According to the Complaint, the double celling, in conjunction with the other unsanitary, unsafe and crowded conditions at SCI-

---

[2] On December 15, 1995, Judge Cohill granted limited relief from the prohibition against all double celling. Docket No. 378. Defendants do not invoke this modification as justification for its subsequent reinstatement of double celling as a common practice at SCI-Pittsburgh.

Pittsburgh, amounts to cruel and unusual punishment, and is impermissible under the Eighth Amendment and Tillery. Defendants vigorously disagree with plaintiffs' assessment of the particular and overall conditions at SCI-Pittsburgh, arguing that the substantial improvements made since Tillery have made it safe, secure and sanitary. Further, defendants assert that plaintiffs' claims are barred because they have failed to exhaust their administrative remedies.

**G. Standards**

**1. Summary Judgment**

Federal Rule of Civil Procedure 56(a)[3] provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); UPMC Health Sys. v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the nonmovant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, 891 F.2d 458, 460–461 (3d Cir. 1989) (the nonmovant must present affirmative evidence -- more than a scintilla but less than a preponderance -- which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party cannot rest "solely on assertions made in

---

[3] Pursuant to the 2010 amendments to the Federal Rules of Civil Procedure, the oft-cited summary judgment standard is now located in Rule 56(a) rather than 56(c), with a slight change of wording. Although the word "issue" has been replaced with "dispute," this change does not affect the substantive standard or the applicability of prior decisions construing the standard. See Fed.R.Civ.P. 56(a) advisory committee's note.

the pleadings, legal memoranda, or oral argument," Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), but must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The inquiry, then, involves determining "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991) (quoting Anderson, 477 U.S. at 251-52). "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)).

**2. Liability under 42 U.S.C. § 1983**

Plaintiffs assert liability against defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2)

that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

**Official Capacity**

The Eleventh Amendment provides states, state agencies, and state officials with immunity from suits for damages in federal court brought against them in their official capacities. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989). Further, "Section 1983 does not override a [s]tate's Eleventh Amendment immunity." Kirkland v. Morgievich, No. 04-1651, 2005 WL 3465669, at *2 (D.N.J. 2005). State officials acting in their official capacities are not persons for Section 1983 purposes. Will, 491 U.S. at 71. "[N]either a [s]tate nor its officials acting in their official capacities are 'persons' under [Section] 1983." Hafer v. Melo, 502 U.S. 21, 26 (1991); Edelman v. Jordan, 415 U.S. 651 (1974) (claims for damages against state employees acting in their official capacity must be dismissed).

**Personal Capacity**

To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior. Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. Rode, 845 F.2d at 1207.

### 3. Eighth Amendment

Under the Eighth Amendment, prisoners are constitutionally protected from cruel and unusual punishment. Farmer v. Brennan, 511 U.S. 825 (1991). But, "not all deficiencies and inadequacies in prison conditions amount to a violation of an inmate's constitutional rights." Booth v. King, 228 Fed.Appx 167, 171 (3d Cir. 2007). Cruel and unusual punishment will only be found "where, viewing the totality of the conditions in the prison, the inmate's conditions of confinement, alone or in combination, deprive him of the minimal civilized measure of life's necessities." Id. (quoting Tillery, 907 F.2d at 426–27).

In the non-medical context, the Eighth Amendment imposes a duty upon prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measure to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526–27 (1984). "[D]ouble celling can amount to an Eighth Amendment violation if combined with other adverse conditions." Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996) (citing Tillery). To make out an Eighth Amendment claim based on prison conditions, the plaintiff must show "he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference." Farmer, 511 U.S. at 834. An objectively, sufficiently serious injury is one that denies the inmate "the minimal civilized measure of life's necessities," such as food, water, and shelter. Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 419 (3d Cir. 2000).

### H. Application Of Standards

Defendants' position, essentially, is that the American Correctional Association has approved the double celling at SCI-Pittsburgh, that all of the various defects of the facility have

been and are being addressed, and that plaintiffs' claims involve only isolated instances. For example, defendants have a contract with Orkin exterminators for rodent control, although occasionally a mouse or two might slip through Orkin's defenses.

Plaintiffs counter, from their own personal observations and experience at SCI-Pittsburgh, that while SCI-Pittsburgh can appear marginally adequate on paper, reality paints a much different -- and constitutionally inadequate -- scene. For example, plaintiffs acknowledge the contract with Orkin, but state that Orkin has not adequately dealt with the problem and that, from their own observations, the place is crawling with rodents.

The Court finds that there are genuine disputes of material facts relating to the prison conditions and double celling of inmates under all of the circumstances, and that these disputes must be resolved by the finder of fact.

**I. Exhaustion**

Defendants argue that this Court cannot address Cullen's double celling complaint, nor Perry's leaking roof complaint, because both of these claims have been procedurally defaulted. The Prison Litigation Reform Act of 1995 ("PLRA") prohibits an inmate from bringing a civil rights suit alleging specific acts of unconstitutional conduct by prison officials until the inmate has exhausted available administrative remedies. 42 U.S.C. § 1997e(a) (2001). The exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered by the administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001). Exhaustion is mandatory under the PLRA. Id. at 739-41.

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). See also Concepcion v. Morton, 306

F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis, 204 F.3d at 73 (by using language "no action shall be brought," Congress has "clearly required exhaustion"). The Third Circuit has made clear that there is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at *1 (3d Cir. 2007) (citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'").

To satisfy the exhaustion requirement, an inmate must present his claims *in substantial compliance* with the grievance procedures established by the prison. Nyhuis v. Reno, 204 F.3d 65, 77-78 (3d Cir. 2000) (emphasis added). If the prisoner fails to follow these procedures, then the claims are procedurally defaulted. Spruill v. Gillis, 372 F.3d 218, 228-31 (3d Cir. 2004). The understanding in the Third Circuit is that "compliance with the administrative remedy scheme will be satisfactory if it is substantial." Nyhuis, 204 F.3d at 77; Spruill, 372 F.3d at 227-32, 231 n. 10; Rivera v. Pennsylvania Dept. of Corr., 2010 WL 339854, *1 (W.D.Pa. 2010) (citing Nyhuis, 204 F.3d at 77-78).

The DOC grievance procedure – contained in DC-ADM 804 – has already been determined by the Third Circuit to be an adequate administrative remedy for PLRA purposes. See Booth v. Churner, 206 F.3d 289, 292 (3d Cir. 2000), aff'd 532 U.S. 731, 741 (2001); Ahmed v. Dragovich, 297 F.3d 201, 204-05 (3d Cir. 2002). Under DC-ADM 804, proper exhaustion requires three steps: the filing of an initial grievance; an appeal to the facility manager; and an appeal to the Secretary's Office of Inmate Grievances and Appeals. Ahmed, 297 F.3d at 204-05;

Spruill, 372 F.3d at 232; see also Defendants' Brief in Support of Summary Judgment [ECF No. 116, Exhibits B, C].

Defendants rely on pertinent provisions of the PaDOC's administrative grievance procedure. DC-ADM-804 requires that an initial grievance be filed within 15 days of the events alleged in the grievance, and grievances that are filed late are rejected at the initial review as untimely. Defendants' Brief in Support of Summary Judgment [ECF No. 116, at 10, and referencing Exhibit B at ¶ 3 and Exhibit C]. In addition, pursuant to DC-ADM 804, an inmate's appeal to the Superintendent cannot exceed two pages in length, and appeals that violate this provision can be rejected for non-compliance with the rules set forth in the policy. Defendants' Brief in Support of Summary Judgment [ECF No. 116, at 10, and referencing Exhibit B at ¶ 8, and Exhibit C].

Plaintiff Cullen filed Grievance 250607. Citing the equitable decree in Tillery, Grievance 250607 complains that his involuntary double celling by Ronald Blandford, his Unit Manager, was unconstitutional in light of the amount of time he must spend spent in his cell, its size, having a cellmate with hepatitis C, lack of adequate recreational areas, and other unsafe or unsanitary prison conditions. Defendants' Concise Statement of Material Facts, Exhibit E, [ECF No. 115-2, at 9-13 of 43]. Defendant Blandford, who was assigned to review the grievance by defendant Carol Scire, Grievance Coordinator, denied it because "SCI-Pittsburgh has received ACA accreditation after the findings of the case that you cite as your reference. Therefore, C-Unit is compliant with ACA standards and is fit for double celling." Defendants' Concise Statement of Material Facts, Exhibit E, [ECF No. 115-2, at 8 of 43].

On his first level appeal (the "initial review") from denial of Grievance 250607, Defendants' Concise Statement of Material Facts, Exhibit E, [ECF No. 115-2, at 5-7 of 43],

Superintendent Dawn Chamberlain, also a defendant, summarily denied his appeal because it failed "to comply with the DC-ADM 804, which specifically directs that the statement of facts shall not exceed two – (2) pages. Your appeal is three – (3) pages, further I find no argument of merit contained in your lengthy appeal . . . ." Defendants' Concise Statement of Material Facts, Exhibit E, [ECF No. 115-2, at 4 of 43].

Plaintiff Perry filed numerous grievances to final review. The only grievance defendants claim is procedurally defaulted, because it was untimely filed, is Grievance 268803, complaining about a leaky roof. In their Concise Statement of Material Facts, defendants state:

> Inmate Perry filed one grievance, # 268803, regarding a leaking roof in D unit at SCI-Pittsburgh, which resulted in water in the dayroom. However, that grievance was rejected due to untimeliness. As a result, Plaintiff's appeal to final review was dismissed as he had not followed the dictates of DC-ADM 804. Thus, Perry procedurally defaulted on this grievance by failing to follow the provisions of DC-ADM 804. See Exhibit K.

Defendants' Concise Statement of Material Facts, Exhibit E, [ECF No. 115, at ¶ 28].

The Court finds that plaintiff Cullen was in substantial compliance with DC-ADM 804 when he filed Grievance 250607 complaining of unconstitutional double celling, and therefore he did not procedurally default this claim. This Grievance exceeded the two page limit by one-half page, and it was legible, clear and articulate, such that the additional half page did not pose an impediment to review. Similarly, plaintiff Perry's grievance about the leaky roof was in substantial compliance with the rules and regulations, as it was in fact timely. As Perry states in his Brief in Opposition to Summary Judgment, [ECF No. 128, at 6], the grievance did not concern one isolated instance where the roof is alleged to have leaked, but rather, Perry states that the roof leaked when he got to SCI-Pittsburgh, while he was confined at SCI-Pittsburgh and when he was transferred from SCI-Pittsburgh. Thus, the leaky roof was of the continuing event variety, and plaintiff's grievance must be deemed timely.

The Court is particularly reluctant to find procedural default when, contrary to DC-ADM 804, Grievance Coordinator Scire assigned initial review of plaintiffs' grievances to the officers who were the subjects of their grievances. As Cullen points out in his Brief in Opposition to Summary Judgment, [ECF No. 127, at 2], Ms. Scire was a defendant in a previous case wherein a jury found for the Plaintiff and entered a damage verdict in the amount of $10,000 for improperly assigning review of grievances to persons who were the subject of the grievances. See Jacobs v. Pennsylvania Dep't of Corr., Case No. 04-1366, Memorandum Opinion, Conti, J., [ECF No. 189, at 15-19], denying defendants' Motion for Judgment as a Matter of Law, and Judgment Order [ECF No. 194].

### J. Official Capacity Claims

As noted, the Eleventh Amendment provides states, state agencies, and state officials with immunity from suits for damages in federal court brought against them in their official capacities. Will, 491 U.S. at 71; Hafer, 502 U.S. at 26; Edelman, 415 U.S. 651. Secretary Beard was sued only in his official capacity, so he must be dismissed from the case entirely. The claims for damages made against all remaining defendants in their official capacities also must be dismissed.

### K. Personal Capacity Claims

As noted, to establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs, which can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. Rode, 845 F.2d at 1207.

Plaintiffs have identified in their Complaint the officers and employees of SCI-Pittsburgh they deem liable in their personal capacities who were involved in the double celling and

conditions of confinement grievance, either by personal action or direction, or by actual knowledge and acquiescence in a subordinate's actions. The defendants allegedly involved in Plaintiff Cullen's claims related to his double celling grievance and named in the Complaint are Blandford, Chamberlain, Scire, Varner, Kovacs, Sauers, and Johnson. Complaint, [ECF No. 14 at ¶¶ 54-57]. The defendants allegedly involved in Plaintiff Perry's grievances related to the physical condition of the facility and named in the Complaint are Emerick, Sauers, Kovacs, Scire, Varner, Crytzer, Chamberlain, Ray and Mozingo. Complaint, [ECF No. 14 at ¶¶ 61-79.

The claims against these defendants should move forward.

### III. CONCLUSION

For all of the foregoing reasons, it is respectfully submitted that defendants' Motion for Summary Judgment [ECF No. 114] be granted in part and denied in part, as set forth fully above.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and the Local Civil Rules, the parties may file objections to the Report and Recommendation on or before June 15, 2012. Failure to timely file objections will constitute waiver of any appellate rights. Any party opposing objections will file their response in accordance with the Local Rules.

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc:
John Cullen
BC6256
SCI Mercer
801 Butler Pike
Mercer, PA 16137

Michael Perry
DA3194
SCI Mercer
801 Butler Pike
Mercer, PA 16137

Martin Stull
Box 52
137 W 2nd Street
Erie, PA 16507

Donald Rusch
HE7208
SCI Mercer
801 Butler Pike
Butler, PA 16137


All counsel of record by Notice of Electronic Filing